Good morning, Your Honors. James Fife of Federal Defenders appearing on behalf of the appellant Ms. Morales-Estrada. I'd like to reserve one minute per rebuttal. Just as a note, all of you, the clock ticks down, as you know, counts down, doesn't tick. But it also counts back up after you've exceeded your time. So just a warning to everybody, don't think because it's going back up that we're giving you more time. It's just the way the clock works. So watch your time. It needs a little minus sign there. So that's on my account. All right. Go ahead. Your Honors, there are two instances of prejudicial error here requiring the Court's action. First, to reverse the conviction on count one because of instructional error. And second, to vacate the sentence on count two because of legal error and abuse of discretion. The outcome of these two cases is pretty clear on a simple comparison with the relevant case law, case law which the government does its best to ignore. As for the conviction on count one, which is the alien smuggling for financial gain, there was error in refusing to grant the Rule 29 motion, but this was compounded by a deficient and confusing instruction and further compounded by confusing argument by the government. The instruction which the district court here quite plainly left out the second level, second component of specific intent required for aiding and abetting under Munoz. This was that this interpretation of Munoz that it requires two components of specific intent was agreed to by all parties below and the district court. In fact, the district court specifically said it thought it was incorporating Munoz. It said that the defense's interpretation was a correct interpretation of the law, but it simply preferred the wording of the government's instruction. The government also intended that it was covering Munoz's requirement. But the problem is simply that the Munoz element, the second element of specific intent, was simply not included in the instruction that the government gave. It was confusing. It was ambiguous. And that confusion and ambiguity was heightened by the structure of the instructions and by the government's argument, which failed to distinguish the different theories of liability it was arguing or the mental states which attached to those two different theories. Now, the defense gave the district court an opportunity to give an explicit instruction which specifically said that Miss Morales had to be shown beyond a reasonable doubt to intend that the principal profit by the smuggling, which is the requirement of Munoz. But instead, the Court opted for the ambiguous instruction, leaving that last sentence out. This created a problem for the jury, which I had been really let me pause here because I think there's some substance to the argument, but I have no difficulty applying it to the facts of this case because your client's defense was that she didn't know the alien was in the dashboard. Correct. It had nothing to do with financial gain. And the jury plainly didn't buy onto that defense because they found her guilty of transporting the illegal alien in. When it comes to the motivation, I mean, we're dealing here with a Chinese woman and Mexican smugglers. It's not real hard to figure out what anybody's motivation in the scheme had to be. This is not some humanitarian effort to bring in a beleaguered person. So I look at these facts and you can parse back and forth between principle and aiding and abetting. Is it her financial gain or his financial gain? Does it really matter in the end in this case? Is there any reason to think that financial gain is going to really be a problem for the government to prove on anybody's part? That's true, Your Honor. But as the Court has pointed out in Munoz, for instance, that simply saying that somebody will profit isn't sufficient. But your attack is sufficiency of the evidence. And jury's allowed to consider the absence of other motive. It seems to me as to both the defendant and I've now forgotten his name, but the guy who's supposed to have been trying to sell the car across the border, their only motivation, the only motivation that makes sense in this context for both of them is financial gain. So it sort of doesn't matter to me whether the jury has to find either one. They're both kind of patently obvious. I think the problem with the instruction, Your Honor, is I believe, I mean, I think it's an accurate statement of the fact that there was only two factors which the government was relying on here. One is the negative implication that there's no other motive. And, in fact, on a comparison of the case law, no case has ever held that that alone is sufficient to find that someone has the required intent. No case has held that. It's always been in combination with some other factor. The only other factor which the government relied upon was the presence of $520 on Ms. Morales when she was arrested. Now, there was a plausible explanation in the record for that that actually is more plausible than the government's explanation of being a lump sum pre-smuggling payment, prepayment by intercontinental smugglers. In fact, Ms. Morales's explanation accounts for all the money in her possession, not just the $520, but the Mexican currency, which she also had. So it's a more plausible explanation. Whether or not simply the absence of a negative implication. Kennedy. The question is whether the jury could reasonably reach the conclusion that they did. And my argument would be, Your Honor, that it would not be reasonable to, in comparison with the case law, to find that that feature alone would be enough, especially in the light of the fact that there is other plausible explanation. Indeed, the jury does have the power to disbelieve any witness, but the jury is not empowered to make irrational decisions. And I would claim that it would be irrational for, given the evidence that was in the record, to simply say, I don't believe, Ms. Morales, I don't. Why is that right? I mean, just to pick up on what Judge Clifton said, if the crux of her defense was, I didn't know the guy was there, and the jury had an opportunity to observe her demeanor and manner while she said that, they could decide she was lying, and then they could disbelieve everything else she said. I mean, why is that an inappropriate thing for the jury to do? Your Honor, I don't believe that simply the fact that the jury found that they necessarily had to find that there was knowledge involved, that that's the same thing as the specific intent requirement. You can't make the leap from knowledge to specific intent to financially gain. There has to be a specific finding. In the case of an aiding and abetting, two specific intents have to be found and supported by the record. The jury has to reasonably find, beyond a reasonable doubt, two specific intents. And on the principle, there at least has to be one additional specific intent. Those are two separate mental states. And the fact that the jury necessarily had to disbelieve Ms. Morales about her knowledge doesn't necessarily believe that they would accept that she had the specific intent. Well, but there's a relatively limited universe of reasons why she would bring an alien across the border in this manner. And if they don't believe her explanation, what other explanations are there? Respectfully, Your Honor, I would disagree. I think there's an infinite universe of reasons why somebody might do this. No, you really can't. Don't hyperbole, because it can't be infinite. I retract that, Your Honor. You're correct. I'm looking for reason two. What is reason two? What other explanation makes any sense whatsoever? Your Honor, one can hypothesize all sorts of them. That's exactly the point. It makes any sense, though. That's my problem. Well, Your Honor, I could say that it makes sense. Perhaps she was making a political statement. Maybe she's opposed to United States border laws. Well, then civil disobedience means she has to pay the price. But, Your Honor, that's not the specific intent to financially gain, which was the charge in this case. The government has to prove it. Can I understand your argument? Because you started out with the jury instruction. Yes. So if, in fact, Munoz's jury instruction had been given as you had proposed it, then would you be here today on a sufficiency of the evidence claim? Yes, Your Honor. Those are separate claims. I believe that the evidence was not sufficient for this. Okay. But that the problem was compounded by the fact it should not have gone to the jury in the first place. But since it did go to the jury, the jury was presented with a situation where it could only guess and, in fact, had given no choice. We have your argument on that. Do you want to address the sentencing issue? Yes. Yes, I do, Your Honor. Judge Fischer is aware this case is controlled by the decision in Miguel, which is the closest case to the facts which support the substantial risk of harm. The jury here specifically rejected on a special verdict that there was a substantial risk of harm. The district court found explicitly on a preponderance standard that that was not the case. It found the enhancement. This was plain error, and plain error which the government concedes by its silence. The government fails to address this argument in its responsive brief, and by the case law cited in my reply brief, that indicates the government has necessarily conceded that. Does it make a difference because there was a mandatory minimum on count three? No. The difference is the fact that, as in Statton, the controlling case here, the potential increase by the enhancement was doubled the underlying guidelines range. Also, it's like Hopper, because it was a sixth-level increase. So there are similar cases. In both pre-Booker and post-Booker cases, this was found to be to satisfy the disproportionate increase of the sentence, which triggers the clear and convincing evidence standard. That was not applied here. It was explicitly the preponderance. No, I'm sorry. I didn't ask my question very clearly. I'm sorry. And I also misspoke as to the count. I thought count one had a mandatory minimum sentence of three years. That's correct. So the error as to count two didn't affect the ultimate sentence, did it? Well, Your Honor, I would say two answers to that. First, if this Court accepts the argument that the conviction on count one has to be reversed, count two now becomes the principal sentence, and therefore there is potential prejudice to Miss Morales here which the Court should correct. Second, the Court has a duty to correct an error in the sentence. It's not simply the case that this would be a harmless error. This is an actual mistake of law, and the Court has a duty. It's a separate count, as shown by the fact that there were two separate special assessments imposed, two separate punishments. The Court has a duty to correct the sentence if there was error. But it wouldn't require anything other than a notation to that effect, because the actual amount of time that your client would serve, assuming that count one is sustained, is not going to be affected. That's correct, Your Honor. I think that the sentence should have been vacated and the enhancement stricken because it was not supported on the evidence. Not only was it not supported by the evidence of the required standard of clear and convincing evidence, but also, as I pointed out, the comparison with the case law, in particular, Miguel, the only point where this case really stands out from any of the other cases, the excessive heat, the cases just are not comparable to the extent that we can rely on the objective evidence of the actual harm caused. The one case, Miguel, which talks about excessive heat as a contributing factor, there's just simply no comparison. Ms. Liu was simply overheated, required maybe 15 minutes of cooling down and some liquids, and was never admitted to the hospital, never given any medical treatment. And most importantly, paramedic Tetley testified that as soon as she was taken out of the dashboard and probably her vital signs were taken, he said her vital signs were normal. So even at the very worst time of her condition, there's no indication that she had suffered unduly from this. Admittedly, that could have been just fortuitous, but taking the only objective standard, the only objective guide we have to the potential risk of harm, the actual risk, there's just no comparison with the case law that this was substantial harm. Okay. Well, you've gone in two minutes into your one-minute reserved time. I'll give you a minute for any short statements if there's necessary. Good morning, Your Honors. My name is Jason Forge. I'm here on behalf of the United States. Your Honors, I want to begin by making clear that we are not advocating, I am not advocating any form of strict liability for aiding and abetting a financial gain count. I think that there are some arguments in our answering brief that could be interpreted that way, and to the extent Your Honors would interpret those arguments that way, I would move to withdraw those arguments. We are certainly not retracting from where we were as counsel conceded at the trial court level, and that was explicitly embracing the notion that an aider and abetter must share the same mens rea as the principal. And I think when we focus on the record of that. Maybe you can at least confirm my understanding of that. That is, the aider and abetter must share the principal's motivation for financial gain. I mean, the issue here gets to be whose gain. Exactly. And I think defense has some arguments saying with regard to the instruction that was given, it can be understood the way that we commonly believe the law requires, but it could also be understood by a jury to obscure the question of just whose gain is at issue. Well, I think, Judge Clifton, that it can't be obscured by the jury in a way that would be improper, because I don't think that there's any way to read the instruction that was actually given and take the – and take out of it the financial motivation for this. Remember, if the jury interprets that instruction as being the defendant intended to gain for herself financially or she intended for the principal to gain financially, either one would be sufficient. Well, under some theory. And because it – but – and I think on the facts of this case, as I guess I've already made clear, I don't know that it makes any difference. But I could imagine situations where the behavior of the parties were such that there And you need to line them all up either in one column or the other. You can't jump back and forth between the two. Well, you know, in these situations, I like to focus on the instruction itself. And that's at 428 of the excerpt of record. And the specific element, as the judge instructed the jury, was that the sixth element given, that the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that person to commit the crime of bringing in an alien for financial gain. So I – and earlier in that same instruction, on the fourth element, the Court instructed the jury that the individual, that the defendant is aiding and abetting, the individual caused the defendant to bring the above-listed person to the United States for the purpose of commercial advantage or personal private financial gain. Let me try it. And I think you've done the right thing in pulling out the instruction itself. How you parse this sentence, and to me the question is really where the for financial gain goes. Right. Is that a description of the crime, which is that defendant aided the principal in the crime the principal was committing? Or is it a description of something relating to the defendant, who may be an aider and abetter? That is, is the crime, commit the crime of bringing in an alien. And the defendant did that for financial gain. As worded, it seems to me that for financial gain, it's one of those kind of clauses we learned about in fifth grade. Right. It can modify either of two things. And we all understand that there's a crime, bringing in an alien for financial gain, and it's not unreasonable to think that the jury probably should understand because there are two counts here, and the for financial gain is what makes the second one separate. Right. But assuming too much legal sophistication on the part of jurors is dangerous. And so I hear the defendant's argument. And I can imagine circumstances where this instruction would trouble me a lot more with regard to what requirement is there to demonstrate financial gain on whose part. Right. Well, I do think, Judge Clifton, when you combine the fourth and sixth elements, when you combine those two there, I think the risk of confusion is minimal, at worst, because the fourth element already says that the person, the jury has to find that the principal, in this aiding and abetting context, the principal was doing this for financial gain. So the principal was doing it for financial gain. And then when we look at the sixth element, we have not just knowingly, but also intentionally. And I just, I agree with you that there is a minimal potential there. And I also agree with you that under the facts of this case, there is no potential for it to have had an impact. But I do think when you combine those two elements and recognize not just knowingly, but also knowingly and intentionally, given the full context of this instruction, I think it's clear to the jury. I think it's clear particularly when you look at the facts of this case. And when you compare it to the defendant's proposed instruction, that was at page 104 of the excerpt of record. I do think it's very interesting to note that what the defendant wanted to tack on at the end of this instruction was the following phrase. So after saying that knowingly and intentionally aided another person to commit the crime of bringing an alien to the United States for financial gain, they wanted to tack on the following, including that Mrs. Morales knew and intended that the person committing the act or acts constituting the crime derive a financial gain from the transaction. I think it's interesting to note, because they used the word including, not and, not in addition to, not a separate element in and of itself, including. So I think even the defense instruction implicitly conceives that that is included within this instruction. I understand your point. We can always look back at instructions. And it is. My concern is that I can imagine someone not understanding that if they didn't understand the law to begin with. So. I do think at bottom, when we're talking just about this case, when you look at the facts of this case and the way it was argued, and the way it was argued clearly shows that the government actually set a higher bar for themselves than they had to because it was argued just that the defendant was gaining, deriving financial gain from it. That doesn't in any way make it improper for the district court to have given an aiding and abetting instruction. But I do think that the argument that the defense raises that the government somehow exploited or exacerbated this potential for confusion just finds no support in the record here. The government in no way invited any confusion or created any confusion in the argument here. I think the record here actually is quite good on that front. Unless my colleagues have questions on this, you might want to get to the sentencing issue. Sure. If Judge Fogle or Judge Fischer do, I'm happy to address them. Whatever we do, are you going to try and rework the instruction next time so it's clearer? Your Honor, I think that we need to do that for you. The message is loud and clear. It will be done, Your Honor. And I think it would be very easy to include a couple extra words to make that crystal clear. Under the sentencing issue, I disagree with counsel that we somehow waived the opposition to the plain error argument. Frankly, I think both sides are almost arguing the same thing. As counsel stated when he responded to the question that I believe Judge Fogle raised, there's no prejudice here if this Court affirms the conviction and there's no challenge to the sentence on count one, affirms the conviction on count one. If the Court affirms the conviction on count one, there's no prejudice whatsoever. And under the plain error standard, that means there's no relief, the defendant is entitled to no relief because the defendant has to show some prejudice. That's basically what the government is arguing in our brief. We take it one step further and say that, well, the clear and convincing standard doesn't even apply unless the impact is on the defendant's ultimate sentence. And I think the state and opinion is a little bit unclear on that front. I don't know that that can be that really works in the end because of the possibility that if the judge is sentencing on separate counts and everybody understands since he says the sentences are concurrent, the only one that's really going to matter is the longer one, that doesn't cause the Court to say, so I'm not going to bother. The Court does sentence on the second count and does so in part because it recognizes there's a possibility that something happens to count one. So the judge can't disregard it on that basis, or at least he didn't articulate any reason like that to disregard the clear and convincing standard. And I think we have a hard time taking as a given that this count doesn't count, so it doesn't matter. It doesn't really affect anything, so you don't apply the right standard. I understand what you're saying, Justice Kagan, and I agree. There's no question it would be a very risky and questionable tact to take for a court to say, well, I know this mandatory minimum count is going to control, and no matter how many enhancements I'm going to imply to count two, it's not going to get up above 36 months, therefore, I'm going to use preponderance of the evidence for every one, even if it winds up quadrupling the sentence on that count. I think that that certainly is problematic, but when you look at the record here where there was no objection to the use of the preponderance of the evidence. Well, you go back to plain error. I understand your argument on plain error. I think it's difficult for you to push the argument beyond plain error to suggest it wasn't error. I think it has to be conceded as error given our case law. I've heard your argument on that. I certainly think in isolation, that count, yes, it would be error under case law. I think Staton does create a little bit of ambiguity, but I agree with you. I think that the better reading of Staton is that you look at the ultimate sentence on the particular count, but I still think that, again, returning to the issue in this case, it would have been a prejudice because it wouldn't have affected the sentence. And respectfully, I disagree with the defense regarding the comparability of this case to the other cases in terms of the obviousness of the risk of injury or death to the smuggled alien. The only they cite only one case that actually shot down the enhancement, and that was the Dixon case. And the only reason Dixon shot down the enhancement was because there was a clear error in the facts, in the factual determination. The district court held that the alien in that case was confined in a trunk, from which the alien couldn't extricate himself on his own, and that provided him with limited access to oxygen, when in fact the record showed that it was an open hatchback. So I think even Dixon supports our case because implicit in Dixon is that had the alien been in a trunk from which he couldn't extricate himself, and in which he'd have limited access to oxygen, the enhancement would be appropriate. Here it's even worse. Here the alien was in a trunk. We have your argument. Thank you, Your Honor. Thank you. Do you have a minute? I just wanted to point out a couple of cases to address Judge Clifton's point that it's not just fifth graders that have trouble with this kind of linguistic scope problem. Excitement Video, United States v. Excitement Video, 513 U.S. 64, and this Court's case, United States v. Flores-Garcia, 198, Feb. 3, 1119. In both of those cases the Court was faced with how far does the word knowing spread through the statute. And in Excitement the U.S. Supreme Court extended it beyond the immediate context, but in Flores-Garcia the unanimous panel restricted it to the immediate local context. It just shows that even well-trained judicial minds have trouble dealing with these kinds of ambiguity, and certainly an ordinary juror would as well. The standard here under Middleton v. McNeil, 541 U.S. 433rd, is reasonable likelihood that the juror would have misunderstood the instructions. Thank you. Kennedy. Most of us aren't smarter than fifth graders. TV has shown it. Thank you, counsel. We appreciate the arguments on both sides and the case arguers.
judges: Fisher, Clifton, Fogel